# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# SOUTHEASTERN DIVISION

| | |
|---|---|
| WILLIS FREEMAN, ) | |
| Plaintiff, ) | |
| v. ) | Case No. 1:04CV 00168 LMB |
| PURPLE CRACKLE CLUB, INC. ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This matter is before the court upon the Complaint of plaintiff Willis Freeman, alleging tort claims against defendant Purple Crackle Club, Inc. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties under 28 U.S.C. § 636 (c). Currently pending is defendant's motion to dismiss for lack of personal jurisdiction and lack of venue, filed pursuant to Federal Rule of Civil Procedure 12(b). (Document Number 3). Defendant has submitted a memorandum in support of this motion. (Doc. No. 4). Plaintiff has filed a memorandum in opposition to defendant's motion to dismiss or, in the alternative, motion for leave to complete jurisdictional discovery. (Doc. No. 7). Defendant has also filed a reply memorandum to plaintiff's response. (Doc. No. 11).

## Background

Plaintiff Willis Freeman is a citizen of the State of Missouri. Defendant Purple Crackle Club, Inc. is an Illinois corporation with its principal place of business in Illinois. Plaintiff's

Complaint alleges that defendant is a club licensed under the laws of the State of Illinois to sell alcoholic beverages. Plaintiff claims that on December 5th and 6th, 2003, defendant sold alcoholic beverages to Romell Watkins, causing him to become intoxicated. Plaintiff claims that he suffered serious and permanent injuries when he was struck by bullets from a handgun fired by Romell Watkins. Plaintiff further alleges that defendant negligently failed to protect plaintiff by providing inadequate security measures.

Defendant argues, in support of its motion to dismiss for lack of personal jurisdiction, that it does not have minimum contacts with the State of Missouri sufficient to subject it to personal jurisdiction in the state. Defendant specifically argues that the alleged tortious act did not occur within the State of Missouri and its activities were not purposefully directed towards Missouri. Defendant asserts that its action of occasionally advertising in the State of Missouri was not directed at Missouri and defendant has thus not purposefully availed itself of the benefit and protection of Missouri law.

In response to defendant's motion, plaintiff argues that he has adduced facts sufficient to establish that defendant's contacts with Missouri are substantial and continuous, subjecting it to not only specific, but general personal jurisdiction in Missouri. Plaintiff argues that defendant subjected itself to personal jurisdiction under Missouri's long arm statute by purposefully and intentionally soliciting patrons from Missouri. Specifically, plaintiff claims that defendant advertised on Missouri radio stations and newspapers, and arranged for a shuttle service which transported patrons from Missouri to its establishment in Illinois. Plaintiff further alleges that due process requirements for jurisdiction have been met because defendant has the requisite contacts with the State of Missouri for personal jurisdiction to exist.

**Discussion**

The burden is on the plaintiff to show that jurisdiction exists in this case. See Enterprise Rent-A-Car Co. v. Stowell, 137 F. Supp.2d 1151, 1155 (E.D.Mo. 2001)(citations omitted). "To defeat a motion to dismiss for lack of personal jurisdiction, the nonmoving party need only make a prima facie showing of jurisdiction." Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1387 (8th Cir. 1991)(citations omitted). This court is to look at the facts of this case in a light most favorable to plaintiff and resolve all factual conflicts in favor of plaintiff as the non-moving party. Id. (citations omitted). See also Angelica Corp. v. Gallery Mfg. Corp., 904 F. Supp. 993, 996 (E.D. Mo. 1995).

In determining whether personal jurisdiction should be exercised over a non-resident defendant, the court must conduct a two-step inquiry. First, the court must determine whether Missouri's long-arm statute applies. See Angelica Corp., 904 F. Supp. at 996. Second, if it is found that the statute applies, the court must determine that the exercise of "personal jurisdiction over defendant comports with the Due Process Clause of the Fourteenth Amendment." Id. "Missouri courts have interpreted the [long arm] statute broadly to cover those cases where the Due Process Clause permits the assertion of personal jurisdiction." Clune v. Alimak AB, 233 F.3d 538, 541 (8th Cir. 2000)(citing State ex rel. Newport v. Wiesman, 627 S.W.2d 874, 876 (Mo. 1982)(en banc)). See also State ex. rel. Deere & Co. v. Pinnell, 454 S.W.2d 889, 892 (Mo. 1970(en banc)("[W]e are convinced that the ultimate objective was to extend the jurisdiction of the courts of this state over nonresident defendants to that extent permissible under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States."). "Thus,

this Court's inquiry into whether the assertion of personal jurisdiction over [d]efendant satisfies Missouri's long-arm statute is coextensive with its inquiry into whether the assertion satisfies due process." Enterprise Rent-A-Car, 137 F. Supp. at 1155 (citing Uncle Sam's Safari Outfitters, Inc. v. Uncle Sam's Army Navy Outfitters-Manhattan, Inc., 96 F. Supp.2d 919, 921 (E.D. Mo. 2000)).

In order for due process to be satisfied, plaintiff must establish the defendant had sufficient "minimum contacts" with the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158 (1945). The Eighth Circuit has delineated several factors the court must analyze in determining whether there is sufficient minimum contacts:

> (1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties.[1]

Burlington Indus., Inc. v. Maples Indus., Inc., 97 F.3d 1100, 1102 (8th Cir. 1996) (citing Land-O-Nod Co. v. Bassett Furniture Indus., Inc., 708 F.2d 1338, 1340 (8th Cir. 1983)). The first three factors are of primary importance, and the last two are secondary factors. See Minnesota Min. and Mfg. Co. v. Nippon Carbide Indus. Co., Inc., 63 F.3d 694, 697 (8th Cir.1995).

Minimum contacts are sufficient if the defendant "purposefully avail[ed] itself of the

---

[1] With regard to the third factor, the relation of the cause of action to the contacts, the type of personal jurisdiction being asserted is important. Specific jurisdiction is "jurisdiction over causes of action arising from or related to the defendant's actions in the forum state." Wessels, Arnold & Henderson v. National Medical Waste, Inc., 65 F.3d 1427, 1432 n. 4 (8th Cir. 1995)(citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8, 80 L.Ed.2d 404 (1984)). Conversely, "[g]eneral jurisdiction refers to the power of a state to adjudicate any cause of action regardless of where the cause of action arose." Id. The inquiry in this case is specific as the contact at issue in this case is directly related to the dispute between the parties.

privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985) (quoting Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958)). "'Purposeful availment' means that the defendant's contacts with the forum state must not be random, fortuitous, attenuated, or the result of unilateral activity of a third person or another party." Guinness Import Co. v. Mark VII Distrib., Inc., 153 F.3d 607, 614 (8th Cir. 1998) (citation omitted). If the court finds that sufficient minimum contacts exist, the court is also required to determine "whether the exercise of personal jurisdiction over that defendant offends 'traditional notions of fair play and substantial justice.'" International Shoe, 366 U.S. at 316, 66 S.Ct. at 158. To satisfy due process, "[t]he defendant's conduct and connection with the forum state must be such that defendant should 'reasonably anticipate being haled into court there.'" Burlington Indus., Inc., 97 F.3d at 1102 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567 (1980)).

Defendant's argument that personal jurisdiction is lacking is primarily based on the facts that: (1) the alleged tortious conduct did not occur in Missouri, (2) defendant's occasional advertisements in Missouri were not directed at Missouri residents, (3) defendant did not specifically solicit Missouri residents to its place of business on the date of the alleged tortious act, (4) the radio and newspaper advertisements occurred many years before the alleged tortious act, and (5) defendant is not authorized to transact business in Missouri and owns no real estate or other asset within the state of Missouri. These facts ostensibly support the argument that Purple Crackle Club, Inc. committed no tortious act in Missouri which would subject it to jurisdiction. "To commit a tortious act in Missouri, it is not necessary that the tortfeasor was

actually present in Missouri, but only that the extra-territorial acts have consequences in the forum." Peabody Holding Co., Inc., v. Costain Group, PLC, 808 F. Supp. 1425, 1433 (E.D. Mo. 1992); Sun World Lines, Ltd. v. March Shipping Corp., 585 F. Supp. 580, 584 (E.D. Mo. 1984); Nelson v. R. Greenspan & Co. Inc., 613 F. Supp. 342, 345 (E.D. Mo. 1985). "So long as a commercial actor's efforts are "purposefully directed" toward residents of another state, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." Wessels, Arnold & Henderson v. National Medical Waste, Inc., 65 F.3d 1427, 1433 (8th Cir. 1995). Hence, the mere fact that Purple Crackle Club, Inc. has no physical presence in Missouri is alone insufficient to defeat jurisdiction. Rather, jurisdiction is proper so long as Purple Crackle Club, Inc. purposefully directed its actions toward Missouri.

Defendant asserts that its action of advertising in Missouri is not action purposefully directed to Missouri residents. Defendant claims that it advertises in yellow pages that are distributed throughout southeast Missouri because this is the only publication available to defendant. Defendant further states that it does not have a web site and is not the author of the Switchboard web site mentioned by plaintiff. Defendant contends that it last advertised on the radio prior to April 2003, and it last advertised in the newspaper between 1982 and 1984. The appropriate time period for assessing minimum contacts requires that courts evaluate the defendant's contact with the forum state over a reasonable period of time. Mason v. Mooney Aircraft Corp., 2003 WL 21244160, *3 (W.D. Mo. 2003). See Helicopteros, 466 U.S. at 409-11 (examining defendant's contacts with forum state over a seven-year period); Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560 (2d Cir. 1996) (six-year period).

In the case at bar, the court finds that Purple Crackle Club, Inc. purposefully directed its

activities toward Missouri. David W. Pearce, President of the Purple Crackle Club, Inc., stated in an affidavit that the Purple Crackle Club, Inc. has advertised its business in two radio stations in Cape Girardeau, Missouri, the last such advertisement occurring prior to April 2003. See Defendant's Supplemental Affidavit at 1. Mr. Pearce explained that Purple Crackle Club, Inc. referenced the bridge between Cape Girardeau, Missouri and East Cape Girardeau, Illinois in the radio advertisements, calling it the "boogie bridge." See id. Mr. Pearce, however, claims that the advertisement referenced the bridge only to explain the club's location. See id. Mr. Pearce confirmed that Purple Crackle Club, Inc. advertised in the Southeast Missourian newspaper and in the yellow pages distributed in Missouri, although he could not recall the exact dates of the newspaper advertisements. See id. at 1-2. Finally, Mr. Pearce stated that Purple Crackle Club, Inc. used a shuttle service in 2001 that transported residents of Illinois and Missouri from the Purple Crackle Club to their homes. See id. Plaintiff, however, maintains that Purple Crackle Club, Inc. employed a shuttle service to transport Missouri bar patrons to Illinois when the Missouri bars closed at 1:30 a.m. See Plaintiff's Affidavit at 2.

In light of these facts, defendant Purple Crackle Club, Inc. intended to attract Missouri residents to its establishment in Illinois. As such, Purple Crackle Club, Inc. has purposefully availed itself of the privilege of conducting activities within Missouri. It has employed multiple methods of advertising in Missouri to encourage Missouri residents to cross the bridge into Illinois. Defendant sought to attract Missouri bar patrons by advertising its late-night hours. In fact, defendant's current yellow pages advertisement, which is circulated to Missouri residents, states in large bold letters, "OPEN 8AM-5AM, 7 DAYS A WEEK." See Plaintiff's Affidavit at 5. Even though defendant claims that some of these advertisements occurred a few years before the

alleged tortious conduct took place, they occurred within a reasonable time before plaintiff filed his complaint. Because of this purposeful availment to the forum, defendant should have anticipated being haled into court in Missouri. Further, the United States District Court for the Eastern District of Missouri, Southeastern Division, is located only three miles from defendant's establishment. As such, jurisdiction in this court would be convenient for the parties. Thus, minimum contacts exist sufficient that the exercise of personal jurisdiction over Purple Crackle Club, Inc. does not offend "traditional notions of fair play and substantial justice."

## **ORDER**

**IT IS HEREBY ORDERED** that defendant Purple Crackle Club, Inc.'s Motion to Dismiss is denied.

Dated this <u>  16th  </u> day of September, 2005.

<u>                                              </u>
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE